

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00321-CR

BENJAMIN FRANKLIN FORSYTH              APPELLANT
A/K/A BENJAMIN FRANKLIN
FORSYTH, JR.

V.

THE STATE OF TEXAS                          STATE

----------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In four issues, Appellant Benjamin Franklin Forsyth appeals his convictions for possession of a controlled substance and unlawful possession of a firearm by a felon. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

Based on an informant's tip, Hood County peace officers executed a search warrant to search Deborah Hudgins's two-story house for the presence of methamphetamine. At the time of the search, Forsyth was renting the upstairs portion of the house where the officers found .22 caliber ammunition and drug paraphernalia. In a downstairs closet, officers found .22 caliber shells inside of a .22 caliber rifle. The State brought two charges against Forsyth, who pleaded guilty to possession of less than one gram of methamphetamine but not guilty to possession of a firearm by a felon.

Forsyth's trial counsel filed a motion for continuance because Hudgins, "the sole and essential defense witness," would be unavailable for the original trial setting. The motion stated that Hudgins expressed a willingness to testify without the necessity of a subpoena. The trial court granted this motion and reset the case for July. Knowing that the trial had been reset for July 7, 2011, but not knowing what time the trial was scheduled to begin, Hudgins assumed that the trial would begin at 9:00 a.m. and arrived at the courthouse at 8:30 a.m. However, courthouse security officers told her that there were no felony trials that morning,[2] and so Hudgins left to take her grandchildren swimming.

The State's witnesses, Hood County peace officers, were the only witnesses to testify at trial. The jury found Forsyth guilty of both charges and

[2]Hudgins also testified that the officers told her that "there wasn't any court that day."

2

assessed a $10,000 fine for each conviction as well as concurrent sentences of two and ten years' confinement for the drug and firearm convictions, respectively. Forsyth filed a motion for new trial alleging, in part, that his trial counsel had been ineffective for failing to subpoena Hudgins. To the motion, Forsyth attached an affidavit, not from his trial counsel but from his appellate counsel. In this affidavit, appellate counsel averred that trial counsel had told Hudgins to appear, that Hudgins arrived at the courthouse, and that she was turned away by courthouse security officers.

At the hearing on the motion for new trial, Hudgins testified that she had kept the rifle, which belonged to her nephew, hidden in her downstairs closet and that she did not believe that Forsyth knew about the rifle because he was only permitted to enter the lower portion of the house to do laundry. Forsyth also called his parole officer, Darren Olsovsky, who testified that he had visited Forsyth's residence several times but had never entered the downstairs portion because the upstairs portion had a separate entrance. The trial court denied the motion for new trial, and this appeal followed.

### III. Due Process and Rule 21.3(e)

In his third issue, Forsyth claims that the trial court abused its discretion by denying his motion for new trial because he was denied federal due process when courthouse security officers turned Hudgins away from the courthouse. Because it is unclear from his argument whether he is claiming a due process violation or claiming that the trial court abused its discretion by failing to grant his

3

motion for new trial under rule 21.3(e), we will address both. *See* Tex. R. App. P. 21.3(e).

The proper procedural due process analysis is two-tiered. *Rodriguez v. State*, 21 S.W.3d 562, 568 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (op. on reh'g) (citing *Ex parte Montgomery*, 894 S.W.2d 324, 327 (Tex. Crim. App. 1995)), *cert. denied*, 532 U.S. 995 (2001). First, the reviewing court must decide whether a protected liberty or property interest exists. *Id*. If this interest exists, the court must ask the second question, which is whether sufficient procedural safeguards ensure that there is no arbitrary interference with the interest. *Id.*

Here, Forsyth does not address the second tier of this inquiry; he does not claim that his subpoena power or his right to request a continuance was in any way abridged. *See id.* Indeed, Forsyth admits that his trial counsel chose not to subpoena Hudgins, and there is no evidence in the record that Forsyth tried to move for a continuance after Hudgins failed to appear. *See id.* ("The fact that appellant's reliance [on a witness's promise to appear] proved to be misplaced does not constitute interference with his right to compulsory process."). In any event, Forsyth's notice and opportunity to be heard at the hearing on his motion for new trial was a sufficient procedural safeguard to protect his liberty interest. *See id.* (noting that deprivation of a protected interest requires notice and an opportunity to be heard and determining that hearings on appellant's motion for continuance and motion for new trial provided sufficient safeguards).

4

Further, to the extent that Forsyth claims that the trial court abused its discretion by denying his motion for new trial in violation of rule 21.3(e), the granting or denying of a motion for new trial lies within the trial court's discretion. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). When reviewing a trial court's denial of a motion for new trial, we do not substitute our judgment for that of the trial court; rather, we consider whether its decision was arbitrary or unreasonable. *Id.*

Rule 21.3(e) requires, in part, that a motion for new trial must be granted "when a material defense witness has been kept from the court by force, threats, or fraud." Tex. R. App. P. 21.3(e). However, Forsyth does not argue on appeal, nor did he argue in his motion for new trial, that anyone kept Hudgins away from the court by force, threats, or fraud, and the record does not support such a claim. To the contrary, although Forsyth has maintained that courthouse security officers gave Hudgins misinformation, he does not claim, and there is no evidence to show, that they did so fraudulently. Because Forsyth failed to establish entitlement to relief under rule 21.3(e), the trial court did not abuse its discretion by denying Forsyth's motion for new trial, we overrule his third issue. See *Rodriguez*, 21 S.W.3d at 567; *Lewis,* 911 S.W.2d at 7.

Forsyth's fourth issue is the same as his third except that he argues that he was deprived of due course of law under the Texas constitution. However, Forsyth only raised his constitutional challenges below in his motion for new trial, and in that motion, he failed to argue that the state due course of law provision

provides greater protection that the federal due process clause. Therefore, he has failed to preserve this complaint for appellate review. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (holding that by failing at trial to distinguish the rights and protections afforded under the Texas due course of law provision from those provided under the Fourteenth Amendment, appellant failed to preserve for appellate review his complaint that the due course of law provision provides greater protection). Accordingly, we overrule Forsyth's fourth issue.

## IV. Ineffective Assistance of Counsel

In his first issue, Forsyth claims that the trial court abused its discretion by denying his motion for new trial because his trial counsel was ineffective under the United States Constitution for failing to subpoena Forsyth's sole witness. Forsyth's second issue is the same except that he claims that his trial counsel was ineffective under the Texas constitution. Because Texas's right to counsel provision is no more protective than its federal counterpart, *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999), we will address his first and second issues together.

### A. Standard of Review

To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have

been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based

upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

## B. Analysis

Forsyth argues that trial counsel was ineffective for failing to subpoena and call[3] Hudgins because Hudgins was available and her testimony would have benefitted Forsyth. *See King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) (holding that failure to call a particular witness will not be considered deficient performance absent a showing that the witness was available and that the defendant would have benefitted from the witness's testimony).

---

[3]Forsyth does not distinguish his contention that trial counsel failed to subpoena Hudgins from his contention that trial counsel failed to call her, so we will not treat the two differently. *See* Tex. R. App. P. 47.1.

There is little question that Hudgins was available on the day of the trial and that her testimony would have benefitted Forsyth, but this does not mean that trial counsel's failure to subpoena her constituted ineffective assistance because Forsyth has failed to overcome the presumption that trial counsel's decision not to subpoena Hudgins "might be considered sound trial strategy." *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Indeed, the decision to subpoena a defense witness is considered a matter of trial strategy. *Robertson v. State*, No. 01-02-00046-CR, 2002 WL 31236391, at *1 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (not designated for publication) ("Placing a witness under orders of the trial court, rather than merely asking the witness to return voluntarily, might cause apprehension, resentment, or even injurious testimony on the part of a witness alienated by the coercive action."); *see Pineda v. State*, 2 S.W.3d 1, 6 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (finding no authority for the proposition that failure to subpoena a witness is ineffective assistance).

By not addressing trial counsel's motives, Forsyth appears to take the position that regardless of motive, trial counsel's failure to subpoena Hudgins was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). However, this is not a case in which trial counsel wholly failed to contact a defense witness. *Cf. Shelton v. State*, 841 S.W.2d 526, 526–27 (Tex. App.—Fort Worth 1992, no pet.) (holding, without any evidence of counsel's trial strategy, that counsel's failure to contact a key defense witness was ineffective). "Rather, this is a case

9

in which the . . . witness promised to appear and testify at trial and counsel reasonably expected [her] to appear, but the witness nonetheless did not." *Pineda*, 2 S.W.3d at 6; *see Robertson*, 2002 WL 31236391, at *1 (holding that even though trial counsel had disavowed any trial strategy in not requesting subpoenas, his belief that the witness would appear was not error, much less conduct falling below objective standards of reasonableness).

Therefore, even if trial counsel's only reason for failing to subpoena Hudgins was his belief that she would appear, Forsyth has not overcome the presumption that this fell within the wide range of reasonable professional assistance.  *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Salinas*, 163 S.W.3d at 740.  Because Forsyth did not satisfy his burden to meet the first prong of *Strickland*, we need not address the second prong.  *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.  Therefore, we hold that trial counsel was not ineffective, *see id.* at 687, 104 S. Ct. at 2064, and we overrule Forsyth's first and second issues.

## V. Conclusion

Having overruled each of Forsyth's issues, we affirm the trial court's judgment.[4]

PER CURIAM

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 12, 2012

---

[4]Our holding, of course, does not foreclose Forsyth's right to pursue a post-conviction writ upon the conclusion of this appeal.  *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (recognizing that "an application for a writ of habeas corpus is the more appropriate vehicle to raise ineffective assistance of counsel claims").